**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **APRYL VELAZQUEZ,**[1] | : | **No. 3:25-CV-1717** |
| | : | |
| **Plaintiff** | : | **(Caraballo, M.J.)** |
| | : | |
| **v.** | : | |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of** | : | |
| **Social Security** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

## I. Introduction

Plaintiff Apryl Velazquez seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. The Court has jurisdiction pursuant to Title 42, United States Code, Section 405(g), and Title 28, United States Code, Section 636(c).

[1] The Court notes that the claimant's name is spelled "Velaquez" in the complaint. Doc. 1. However, subsequent filings and medical records show that "Velazquez" is the proper spelling.

Velazquez contends that Administrative Law Judge ("ALJ") Therese Hardiman committed two errors that warrant remand in finding that Velazquez was not disabled under the Social Security Act: (1) the ALJ failed to develop the record when formulating Velazquez's residual functional capacity; and (2) the ALJ failed to consider the vocational impact of Velazquez's repeated hospitalizations on her ability to maintain regular work. Doc. 7 at 2.

As explained below, ALJ Hardiman's conclusion on the first issue was not supported by substantial evidence in the record, nor coupled with sufficient reasoning to permit meaningful judicial review. Accordingly, the Court vacates the Commissioner's decision to deny Velazquez's claims for social security disability benefits and remands this case for further proceedings.

## II. Background[2]

On July 22, 2022, Velazquez applied for disability insurance and SSI benefits, alleging disability as of March 31, 2014, due to type 2 diabetes, neuropathy in her hands, stage 3 kidney disease, and low

[2] As the parties and the Court are well-acquainted with the facts underlying this appeal, the Court provides only a brief summary of the procedural history, and addresses the pertinent facts in the discussion below.

vision.[3] Tr. 16, 184-85, 188-92, 234. The Social Security Administration ("SSA") denied Velazquez's application on February 1, 2023, *id.* at 62-63, and again upon reconsideration on December 19, 2023. *Id.* at 74-75. Velazquez accordingly requested and received a hearing on July 2, 2024. *Id.* at 35-61; 105; 161-76.

On September 26, 2024, ALJ Hardiman issued a decision concluding that Velazquez was not disabled. *Id.* at 13-34. Velazquez appealed to the Social Security Appeals Council on October 14, 2024. *Id.* at 181-83. The Appeals Council denied her request on July 17, 2025. *Id.* at 1-7. The instant appeal followed. Doc. 1. The Commissioner provided the record on November 14, 2025. Doc. 5. The parties then filed their respective briefs, leaving this matter ripe for decision. Docs. 7–9.

## III. <u>Discussion</u>

### A. Legal Standard

Review of the Commissioner's decision denying a claimant's application for social security disability benefits is limited to

---

[3] During the hearing, Velazquez withdrew her request for disability insurance benefits under Title II of the Social Security Act and amended her alleged onset date to reflect the date of her filing, July 22, 2022. Tr. 16, 40.

determining whether the factual findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial in this context is "more than a mere scintilla of evidence but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted). Put more pointedly, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In an adequately developed record, this can mean "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966) (citations omitted).

Under this deferential standard, "[f]actual findings which are supported by substantial evidence must be upheld." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) (citations omitted); 42 U.S.C. § 405(g). This Court's role is not to re-weigh the evidence and make factual determinations, but to simply review the record and ensure that

the ALJ provided "a discussion of the evidence and an explanation of reasoning for her conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations and quotations omitted). An ALJ meets that standard by stating "in her decision which evidence she has rejected and which she is relying on as the basis for her finding." *Schaudeck v. Comm'r of SSA*, 181 F.3d 429, 433 (3d Cir. 1999) (citations omitted). Moreover, when there is countervailing evidence, an ALJ must "give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted); *see also* *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (holding that substantial evidence standard is unmet when the ALJ fails to resolve conflicts created by countervailing evidence).

**B. The ALJ's Duty to Adequately Develop the Record**

Velazquez alleges that ALJ Hardiman failed to adequately develop the record after four state agency experts opined that the medical evidence of record was insufficient to assess Velazquez's functional and mental limitations. Doc. 7 at 2. The Commissioner responds that remand is not warranted because the burden of proof lies

with Velazquez, who failed to establish any insufficiency or inconsistency in the record that would trigger the ALJ's duty to develop the record. Doc. 8 at 10.

On January 11, 2023, Michael Francis Lombard, M.D., completed the initial state agency physical assessment. Following his evaluation, Dr. Lombard concluded, "[the] evidence of record is not sufficient to establish current severity of alleged symptoms or functional limitations." Tr. 70. A second state agency physician, Marie T. Brislin, D.O., re-examined the record on December 19, 2023, and affirmed that the "evidence of record is not sufficient to establish current severity of alleged symptoms or functional limitations." *Id.* at 78.

State agency psychologists reached similar conclusions regarding Velazquez's alleged mental impairments. Timothy Michael Ostrich, Psy.D., performed the initial state agency mental assessment on January 30, 2023. *Id.* at 72. Dr. Ostrich noted that there were "[n]o recent/detailed mental status examinations [] on file," and opined that "[t]he available medical evidence is insufficient to evaluate the severity of functional limitations results from mental health impairments." *Id.* Susan Malkoff Schwartz, Ph.D., performed the state agency re-

assessment on July 19, 2023, where she concluded that "[t]he available medical evidence is insufficient to evaluate the severity of functional limitations resulting from the alleged mental health impairments. The available evidence is lacking in sufficient detail, and too old and incomplete, for an accurate evaluation of current functioning." *Id.* at 80.

Recognizing the need to further develop the record, in August of 2023, the SSA requested that Velazquez undergo a consultative exam. *Id.* at 350, 353. An examination did not occur prior to the hearing on July 2, 2024, despite the SSA's attempts to schedule two separate appointments. *Id.* at 54. During the hearing, Velazquez's attorney advised ALJ Hardiman that Velazquez was unable to attend either evaluation because she was hospitalized on both occasions. *Id.* at 54-56. Accordingly, Velazquez's attorney renewed her request for a consultative examination to ensure "some functional limitations from a medical source" were included in the record. *Id.* at 56.

ALJ Hardiman issued her decision without ordering a consultative examination, and determined that Velazquez maintained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for two hours in an eight-hour workday. The claimant can no more than occasional climbing of stairs and ramps, no climbing of ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, crouching, or crawling. There should be no more than occasional bilateral overhead reaching. The claimant must avoid concentrated levels of temperature extremes, humidity, vibration, fumes and hazards, defined as heights and moving machinery.

*Id.* at 25. ALJ Hardiman acknowledged the lack of medical opinion evidence and referenced state expert findings that the record "contain[ed] insufficient evidence on which to base any determination of disability." *Id.* at 28. The ALJ nonetheless concluded that Velazquez "failed to meet her burden" and held "the record now contains sufficient evidence to support the findings herein." *Id.*

As an initial matter, the parties contest the role and necessity of medical opinion evidence in determining a claimant's residual functional capacity. *See* Doc. 7 at 5; Doc. 8 at 7. Velazques cites *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986), to posit that a medical opinion is a prerequisite to a decision supported by substantial evidence. *Id.* at

29; *see also* *Gormont v. Astrue*, 2013 WL 791455, at *7 (M.D. Pa. 2013) ("[R]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."). The Commissioner, on the other hand, points to *Titterington v. Barnhart*, 174 F. App'x 6 (3d Cir. 2006), for the proposition that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Id.* at 11. The Court need not resolve the purported split in authorities, as both cases involved an ALJ determining a residual functional capacity at odds with a medical opinion of record, and thus are inapplicable to this matter. The issue here is not whether an ALJ may depart from a medical opinion when formulating an individual's residual functional capacity, but whether an ALJ's determination was supported by substantial evidence in the complete absence of a medical opinion.

Although the claimant bears the ultimate burden of proving disability, the ALJ has a "duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted); *see also* *Hess v. Sec'y of Health, Ed. & Welfare*, 497

F.2d 837, 840 (3d Cir. 1974). It is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity] determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). If the evidence of record is insufficient to determine the claimant's disability status, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. § 404.1520b(c). Where the record is insufficient, the ALJ may "recontact[] a claimant's physician, psychologist, or other medical source, request[] additional existing records, ask[] the claimant to undergo a consultative examination, and ask[] the claimant or others for more information." *Suskie v. Colvin*, 2016 WL 5787361, at *5 (M.D. Pa. 2016) (citing *id.*).

"The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Miller v. Berryhill*, 2019 WL 3776662, at *7 (M.D. Pa. 2019) (citing *Thompson v. Halter*, 45 F. App'x. 146, 149 (3d Cir. 2002)). "[W]here the medical evidence in the record is inconclusive, a

consultative examination is often required for proper resolution of a disability claim." *Brown v. Saul*, 2020 WL 6731732, at *10 (M.D. Pa. 2020) (*report and recommendation adopted by* 2020 WL 6729164 (M.D. Pa. 2020)) (citations omitted).

In *O'Neill v. Bisignano*, this Court held that an ALJ erred in failing to order a consultative examination where "[t]he plaintiff specifically requested such examination[], and every state agency expert who reviewed this case agreed that there was insufficient evidence to make an informed disability determination." 2025 WL 3469271, at *9 (M.D. Pa. 2025); *see also* *Goff v. Colvin*, 2016 WL 4480069, at *2-3 (W.D. Pa. 2016) (remanding and instructing the ALJ to order a consultative examination based on claimant's request and state agency expert's determination that further development of the record was appropriate).

So too here, where Velazquez's attorney requested that a consultative examination be reordered, based on the consensus among four state agency experts that the record contained insufficient evidence to assess the severity of Velazquez's impairments. Tr. 56. Notably, the SSA initiated two attempts to schedule a consultative examination prior to the hearing, signaling the need for further development of the record.

*Id.* at 350, 353. Taken together, these factors demonstrate that ALJ Hardiman required supplemental evidence to render an informed decision. The Court, therefore, agrees that the ALJ failed to adequately develop the record, and that, by declining to reorder a consultative examination, the ALJ's residual functional capacity determination was not supported by substantial evidence. Accordingly, the Court will remand for further consideration by the Commissioner.[4]

While the Court concludes that this error compels a remand in this case, nothing in this opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment should be. Instead, that judgment remains within the province of the ALJ when the medical record is fully developed.

## IV. Conclusion

For the reasons set forth above, the Court will **VACATE** the decision of the Commissioner and **REMAND** this case for further proceedings. A separate order shall follow.

Date: October 6, 2026

***s/ Phillip J. Caraballo***
Phillip J. Caraballo
United States Magistrate Judge

---

[4] Because the Court will remand based on Velazquez's first contention, it need not reach the second issue raised in her brief. Doc. 7.